Good morning. Good morning. May it please the Court, my name is Jason Culler, I represent the appellant Robert Greene, and I would like to reserve five minutes for rebuttal. This appeal involves the dismissal of all of Mr. Greene's claims, which were all claims for unpaid wages, without leave to amend by the District Court. And I think the Nevada Supreme Court has made all our jobs a little easier with the recent decision in the Yellow Cab case. As this Court is aware, in Yellow Cab, the Nevada Supreme Court decided the issue of whether the minimum wage amendment repealed the exemptions found in NRS 608.250, including the specific statutory exemption for taxi cabs and limousine drivers. I think we can probably, in terms of cutting to the chase, I think we can all agree that the Nevada Supreme Court's decision clearly makes it a little easier, but on the other hand it leaves some things open. It does not describe immediately what the role of the Labor Commissioner is, whether there's a private right of action, it doesn't talk about retroactivity, and maybe you can address those issues. Let's talk for a minute about, given the lay of the land with Nevada labor laws and the particular sections that we're talking about here, aren't those exclusively reserved to the purview of the Labor Commissioner to prosecute under Nevada law? No, they're not, Your Honor. Okay. Tell us why. And first of all, just limiting myself to the minimum wage amendment, that contains its own private cause of action. That's what we're talking about. Right. Okay. So if we're clear that that is a private right of action, as far as whether the Labor Commissioner has exclusive rights, that was not even the holding of the Nevada Supreme Court in Baldonado, which was limited to NRS 608.160, and that fact was even the holding of NRS 608.16, it doesn't extend equally to the provision in this case, which is 608.016. It's within the same set of enumerated statutes. So what's the reasoning that applied in the case of Baldonado that wouldn't apply in this case? Well, you know, Your Honor, private right of action has never been asserted below, and the first thing I would say is I would claim it's been waived as never having been raised as there ever not being a private right of action. I can cite a — there was a litany of cases finding private rights of action to enforce other sections beyond what Baldonado found there was not an expressed private right of action for. And the Supreme Court, the Nevada Supreme Court itself, in a SOMOS decision, which is cited and quoted in our reply brief at pages 4 and 14, basically acknowledged that it would not make sense to have this statutory scheme set up for the rights of employees and not give them a way to enforce it. And, you know, the issue is even more involved than that, and it hasn't been briefed in this case because it was never raised. But there's a Nevada administrative code section that doesn't even obligate the labor commissioner to take these cases. And one of the reasons, and I am really shooting off the top of my head, one of the reasons is if the private party is represented by counsel, which in and of itself implies that if the party had counsel, the labor commissioner would take a hands-off approach. Let me just quote to you, counsel, from a little piece of the Nevada revised statute, section 608.180. It says in part, the labor commissioner or the representative of the labor commissioner shall cause the provisions of NRS 608.005 to 608.195 inclusive to be enforced. Baldonado, I think, makes it clear that that means that's under the labor commissioner's responsibility. The section we're talking about here is 608.100, and unless my math is really, really, really bad, it falls within those two encompassing sections that I referred to. Given that fact, isn't it clear, at least under the statute, that the labor commissioner is supposed to enforce this? Is it your argument, yeah, I can do that, but that doesn't mean there isn't a private right of action as well? Yes, Your Honor, that there are provisions for the labor commissioner to enforce. They are not the exclusive means of enforcement. Doesn't Baldonado suggest otherwise? No. In fact, in a footnote in Baldonado, and I would be happy to provide supplemental briefing on this. Footnote 33, right? Are you about to talk about footnote 33? Yes. It explicitly recognizes that there is a private right of action to enforce other provisions such as 608.140 and .150, which ---- Which is within the range. Within the range, recognized by Your Honor. So I think there's even authority by the Supreme Court itself that there is a private right of action within the range of those statutes. Could I back up for a second? Do you get anything from this statutory claim? If we say that you do have a private right of action under the statutory section that we're discussing, the .016, does that add anything to what you've now gotten from the new Constitution, the ruling that the Supreme Court made? I'm a little unclear whether you need both of those claims. That is an excellent question, Your Honor. And it's something I thought about in preparing for this argument, because the same thing occurred to me once the constitutional wage amendment became clear. I think our position, and if you look strictly at the wording of 608.016, is that the employer has to pay all wages, whatever they are, computed in proportion of time. If you look at the definition, that's more like a regular rate computation. Under the minimum wage amendment, for each hour, you've got to get paid minimum wage. But our argument would be, under 608.016, to the extent the regular rate exceeded the minimum wage, they would be entitled to that. And that would be because, when you look at the commissions and divide them by the to get there. Yes. And no calculation has been made, and I am not here representing that that computation would, in fact, result in an hourly wage above and beyond the minimum wage that we've already discussed. So does he need to have alleged that in the complaint to even have stated a claim? I mean, now that you have the minimum wage amendment, it's a little unclear to me whether he needs this or has stated the claim he would need to, to have them not be duplicative. But, again, I think it would come down to the computation of what the wages were stated in proportion to time. And — And has the complaint alleged that his would be higher than the minimum wage? No. It just purports to get the regular rate. And that was unknown. So, at minimum, minimum wage. So I guess I'm having trouble following your answer to my colleague's question. You say that the amount involved here would be above the minimum wage. So, bottom line, what remedy do you believe you have, given the state of the law? I'm sorry, Your Honor, if I gave that impression. The entitlement is clearly minimum wage. That's the floor under the minimum wage amendment. Right. To the extent you did a computation of wages under NRS 608.012, and that computation of wages or what the employee — employer agreed to pay was higher than minimum wage, I think the employee would be entitled to claim wages that were above minimum wages. And that may very well be true, but what does that have to do with this particular statute or the constitutional amendment? There are two separate things. One guarantees minimum wage. Right. The other would guarantee wages for every hour worked to the extent it exceeded minimum wage. We're not seeking any kind of double coverage. And for that, you're relying on other provisions of Nevada law, or you're relying on this statute and extrapolating from it? I'm relying on 608.016 for the regular rate computation. Would we be able to decide that question here and figure out whether you have a cause of action under this and what it means and whether it means you have more than minimum wage, or would we need to certify that question to the Nevada Supreme Court? I think you can decide it by — because it is a pure matter of law, pure matter of statutory construction that has the same canons. And this case has been pending for quite a while, and we would certainly appreciate you deciding what I think is a fairly straightforward interpretation, especially when you compare it to the interpretation reached by the district court, which was that if an employer agreed to pay nothing to an employee, it wouldn't have to pay anything, basically, for each hour worked. So we think you can clearly reach that issue and decide that issue. If you want to save the rest of your time, you were getting close to 5 minutes. I would, Your Honor. Whatever you like. But if you want to save 5 minutes, maybe you want to let your colleague — I would like to save my 5 minutes. Thank you very much. Let's hear from your opposing counsel here. Good morning. May it please the Court. Mario Lovato on behalf of Defendant Executive Coach and Carriage. We're requesting affirmance for the reasons given by the district court and for the reasons given in Thomas regarding nonretroactivity, especially in response to the motion to amend or correct. We can't affirm, can we? I mean, there is an exception. I'll say it differently. The district court said that this wasn't covered at all. In this case, the constitutional amendment or the whatever you call it, petition — initiative, whatever you had, changed the law, right? You agree with that? No. The amendment did not repeal any law. It was the Nevada Supreme Court in Thomas that implied they repealed the law. Well, the amendment was passed in 2006, correct? It was passed in 2006. And so you're saying that it didn't actually do anything in 2006. It didn't do anything until now? Well, it did what it says. It is — it can only be interpreted by the public for what it actually states. There's no question that it does not expressly repeal any other laws, and it makes no reference to any other laws. But the Nevada Supreme Court has now said that it did. Then you're saying that it didn't do it in 2006, that there was just, like, this vacuum for eight years? Well, the Nevada Supreme Court has not held that the minimum wage amendment effectuated an appeal in 2006. In fact, it said to the contrary, where it used present-tense language, and then — But they're just interpreting the law in the present tense, saying this is what the law means, right? But, you know, I think we can take the Nevada Supreme Court for what it's saying when the issue is pointedly raised by way of a motion before it requesting that language be changed so that it is clearly retroactive. But maybe that's because it's so silly to think that when you say that this is what the law means, it doesn't need to be changed, because obviously it's interpreting what the law means. Well, except that's not what the Nevada Supreme Court said. Well, the Nevada Supreme Court didn't enact the amendment. The voters did.  Well, these are intentionalist arguments looking at presumed intention. Intentionalist? What's that? The idea of arguing what's in people's minds and the public's mind. And it gets a lot of criticism from a lot of courts. There's a better way of examining these things, which is, how are laws built? How are they put together? This was a general rule that raised the amount of minimum wage. It did that. The way statutes are normally drafted and rules are generally drafted is you make a general rule, and then you have exceptions, because there aren't that many exceptions. To do it the other way would be nonsense, because you'd list 787 occupations that are covered while leaving out the five that aren't. There's also the concept of just general certain rules and various more specific ones, and more specific ones that deal with particular subject matter. The exemptions existed since 1965, since the inception of the legislation of the minimum wage. But when the Nevada Supreme Court says the text of the minimum wage amendment supersedes the taxicab driver exception, I don't see any ambiguity there. And that is the law as we have it. It has effectuated for the time being an implied repeal by way of a 4-to-3 decision that is still in flux because there are more cases from other litigants going before the Nevada Supreme Court that are raising arguments that weren't raised before. That's the decision that we have. The question, then, is retroactivity. Does it make a difference? And in the case of implied repeal, it really can't, because that law remained on the books at all times, and there was no legal authority that made clear that the exemptions were eliminated until the Nevada Supreme Court announced it. But now we've heard that it happened in 2006. Well, we've heard that it was announced in 2014, and the Court did not say that it was impliedly repealed as of 2006. And the ---- Well, but obviously, that's when the amendment was passed. Well, I don't think it's obvious. I think we have to look at the what the Nevada Supreme Court said as clearly as possible. Well, you know, I think all of us are struggling with this issue of the retroactivity, whether it applies. You're saying, no way, it doesn't affect it. But under Breithaupt v. USAA Property and Casualty, the Nevada Supreme Court's given us a three-factor test for retroactivity. Applying that standard and those three prongs, how would you say that applies, if at all, to the law that was passed by the voters in 2006? Well, especially in the case of the Thomas decision and in the situation of implied repeal, they all favor executive coaching carriage. Thomas, under the first factor, announced a new principle that wasn't announced anywhere else expressly, which was that there was an implied repeal. An implied repeal can only happen by an announcement from a court. And the Nevada Supreme Court in Thomas was the first to say that there had been implied repeal. The district court here said the opposite. Under the main factor, the third one, whether it produces substantial inequitable results, that is clearly the case here, because you have many limousine and taxicab companies that since 1965 were relying on an occupational exemption. That was not eliminated. In the case of implied repeal, there isn't simply one law that's being interpreted, but there are two laws that were on the books at all times. Members of the public have a right to make employment and other decisions based on laws that remain on the books. It was still part of Nevada law until announced by Thomas in 2014. But realistically, counsel, I mean, I understand you're a good lawyer and you're trying to protect your client's interest here, but it sounds to me like everybody recognizes that on a current basis, the Nevada Supreme Court has said in Thomas that the law has changed. The question is, when did it change? Is it just now or is it retroactive? And is this something that should be certified to the Nevada Supreme Court that construes Nevada law? You said a lot of other cases coming up. Wouldn't that definitively decide this question? Well, I think this is something that is open to certification, but I think the Nevada Supreme Court has given guidance. We wouldn't mind having 20 pages of guidance on it, but the two pages that it provides in its order makes really clear that applying a good-cause standard, addressing the motion to amend or correct, it did not find good cause. It said that it was ruling on the motion. It was delaying remitted, or for purposes of ruling on the motion, and it was making its decision known. When we have the guidance ---- It was interpreting two different laws. The way implied repeal must happen under the authorities is the Court must look at both laws. Now, I think in Thomas there was a situation where the Court was not properly applying the standard. It did announce the standard, but it clearly did not make an effort to look at both of the laws and to harmonize them. So you're disagreeing with Thomas, but we can't disagree with Thomas as to the interpretation of Nevada law. And I'm not looking here today to have this Court disagree with the implied repeal finding of Thomas. But there is the next question of retroactivity. And clearly under the authority ---- But only if we ---- I mean, we don't need to ask whether the 2006 law was retroactive, do we? We have to ---- you're saying that we have to look at whether Thomas was retroactive, but my interpretation is Thomas is interpreting the 2006 law, and it doesn't help you whether the 2006 law was retroactive or not. The question comes, when did the repeal take place? There was no express repeal, and there was no express repeal. I thought it was when the voters passed the amendment, I would think. But can I have you, before you run out of time, address the Court's denial of the motion for leave to amend. I'm assuming, having sat on the district court, that it was counsel's proposed order that got signed, but because of the delay in the Court signing that order, granting ---- finding good cause and granting leave to amend, it ended up the dates didn't work out. So by the time the Court ruled saying that, yes, you could amend, the date for amendment that's proposed had already passed. So how should we look at that record in terms of abuse of discretion review? There were multiple bases on which the Court denied leave to amend. One was the fact that for the fourth time, plaintiffs were attempting to override the court order getting rid of and eliminating the minimum wage claims, which really by including those claims yet again in their amended complaint. There were also ---- Kagan. It turns out they were right about that, though, right? Well, you don't think so. You can see that in the transcripts that are attached to the opposition to motion to reconsider that provides the magistrate judge's transcripts on that. And Judge Navarro ---- And I'm talking about the FLSA claim in particular. I want to focus on that for a moment. And I'm referencing now the ECF filings because I don't think all of these filings made it into the excerpts of record. But it looked like under the original scheduling order, the amendment deadline was March 15. So the plaintiffs missed that deadline. They had to move for the Court to find good cause to permit them to amend, to change the name of the defendant. This was very confusing as to who was the proper defendant. The Court found good cause and granted it. And I'm looking now at ECF 81, and it looked like the Court granted it on June 21. But by the time the Court ruled on June 21, the Court set the amendment deadline for June 15. So how can a plaintiff on June 21 have complied with an amendment date that's set on June 15? And isn't that abuse of discretion? Well, that would only address whether the Court would have reached a different result in applying a different standard under Rule 15 versus Rule 16. I think anyone reading the magistrate judge's decision in the transcripts But the problem with that is that in the order granting leave to amend, the Court found good cause. And we don't question that. What? We can't go back and say, well, there wouldn't have been good cause, or if he'd known that the amendment date had already passed, he wouldn't have granted it. There's no indication in the record on that. That is only changing the date for filing a motion for leave to amend. It is not granting leave to amend, which was a separate question before the magistrate judge. Maybe I can refresh your recollection that may help us all on this. It seems to me that the dates are perhaps mistaken. What I show is that on June 21st, the magistrate judge granted the motion to extend the discovery deadlines, entered the new scheduling dates with the parties it stipulated to. I think some of us have had the impression that that order was a ruling on an earlier point, but in fact that motion wasn't heard until July 29th. And on August 31st, the district judge denied the motion. So maybe we just have a timing problem. We're all looking at different things. But by my understanding, and maybe this refreshes your recollection, the district judge or the magistrate judge in this case didn't enter an order saying you've got to amend at some time in the past which is already closed out. Is that correct? Were you involved in this? My recollection of what occurred is that the argument is being made that the magistrate judge implied a stricter standard under Rule 16 because it was past the date for filing a motion for leave to amend. But that doesn't address the question whether leave should be granted to file this particular amended complaint. The magistrate judge on several different bases did not find good cause for granting leave. Yet another one was the substantial delay in requesting change of the name of the defendant. Can I ask you about that? So you say in your brief, on page 3 of your brief, that in defendant's motion and the attached declaration, you stated that Jacob Transportation Services was the correct entity for to be the defendant here. I looked at the pages you cited, ER 1173 to 80, and I could not find anything saying that Jacob was the right defendant. What it says is that Carol Jimerson is a principal or CEO of Jacob Transportation Services, LLC, very clearly at the beginning. It also says Executive Coaching Carriage is not an entity. The entity for that is Bentley Transportation Services. At the time, the case was consolidated with the case that was filed against Jacob Transportation Services, LLC, and Robert Greene, in 2009, signed a consent to sue to file suit against Executive Las Vegas on a case caption that said it was doing business, that's a DBA for Jacob Transportation Services, LLC. For several years, the case had been ongoing where the defendant knew well that Jacob Transportation Services was the proper defendant. And the magistrate judge was right to be baffled at how Robert Greene could claim not to know who Jacob Transportation Services was. But for several years in this litigation, Bentley responded to motions, filed briefs, and never said, we're not the right defendant. You're at the other case, in the Schemke's case, he said that his employer was Executive Las Vegas, and because Executive seems to have been used in different ways in different entities, I think it's not at all clear that he knew that one of the parts of this caption, Jacob, was really his employer. When one looks through the record, motion after motion filed by Bentley, it's making clear that it's not the right defendant. And it does it from the outset. And at all times, it has either a motion to dismiss or a motion for summary judgment seeking to prevail in the case. And it can't be found at the court. At what point should a defendant step up and say, I'm not the right one? At what point during the discovery process should the defendant advise the court in posing counsel of that? It certainly doesn't have to when the court finds that all claims fail as a matter of law. And Bentley Transportation Services Executive Coach and Carriage was very clear in asserting that all the claims failed. Now, if it didn't prevail on those, then it could raise something, again, about the proper entity or something of that nature. But when the proper entity was known by everyone because the cases were consolidated, there isn't a reason to file a motion. Why would he have sued the wrong entity? I mean, it seems like he was clearly confused because he would have sued the entity that was his employer if he knew who it was. But he was — is there any reason why he would have intentionally sued the wrong entity? Well, that requires some speculating into his mindset. But most attorneys look into the DBA database, fictitious firm filings in Clark County, and look up and see that the DBA for — the DBA of Executive Coach and Carriage is Jacob Transportation Services LLC. That is the proper entity. Then they file suit against the entity. Few attorneys don't go through that step and instead sue a DBA simply because their client or someone else let them know of a DBA. And other questions by my colleagues? Thank you. Thank you very much. Are there any questions about NRS 608.06? There may well be, but we're not going to have them right now. So thank you very much for your argument. We'll hear a rebuttal from counsel. What's your bottom line on the FLSA claim here, given that he has now opted into the Shumkey's lawsuit? The bottom line is, if his case is reinstated, his FLSA claims would be reinstated, and he would have — there would be a longer class period for him and for his client other potential opt-ins. And notice has not been — Is he going to then drop out of the other lawsuit? He can drop out of the other lawsuit. And that's what — Is that his intent, to drop out of the other lawsuit if this one goes forward? Yes. He was the lead plaintiff in his own case, and it was filed first, and it had a longer statute of limitations, as well as having the state law causes of action that provide even greater benefits to the workers he's representing. I'm trying to figure out what your assessment is, just in terms of the practical realities of it. While his lawsuit does have a longer statute of limitation by a few months, it really doesn't affect him, given his dates of employment. So why not just proceed as a member of the Shumkey's suit? Your Honor — Which I'm assuming has been progressing in the court below, right? It is progressing. It appears that the district court there may be waiting on this decision because there's been notice submitted in that case for over a year now, and no notice has gone out. So that court may be monitoring what's going on in this appeal. That may get to the retroactivity question and certification. I think, as a matter of course, we are reluctant, as a Federal court, to construe state law. We can, of course, but when the — in this case, the Nevada Supreme Court is obviously very active in construing this statute. If we were to conclude that we needed to certify the question of retroactivity to the Nevada Supreme Court, what effect do you think that would have on the underlying action? Would everything just grind to a halt until that was resolved? I do, Your Honor, and I want to say that I was traveling yesterday here from Washington, D.C., when the 28-J letter was filed, and I have not filed a response to that, but that was the first time I saw the retroactivity materials. It's also the first time I encountered this Breithaupt decision. But as far as retroactivity, it does seem kind of Kafkaesque to me to argue that the amendment didn't affect the repeal. The judge's opinion, the Nevada Supreme Court's decision, is in the present tense. But the repeal itself, the courts interpret the law. They don't enact the law, and the law was enacted in 2006, and this is merely an interpretation. I don't think there is a retroactivity issue really in the decision itself. I think it makes a clear decision, and it's now defendants who are trying to escape their responsibilities under the law, as all good advocates and defendants would do, by going to the next level of argument, which is claiming it's not retroactive. My brief look at Breithaupt, I think, showed that it was merely whether statutory amendments should be applied retroactively. And I am going to be going to be about whether this goes before 2006. Exactly. Not the issue of whether the interpretation itself. And as far as the claim that employers or limousine companies were caught unawares, first of all, I would say the statute, the constitutional amendment, says what it means and means what it says. But other than that, and what hasn't been discussed here, is that one of the reasons they're being sued is there's an FLSA obligation to pay minimum wage. There's no Motor Care Act exemption for minimum wage. And they weren't paying minimum wage under the FLSA either, which is why the Schemke's case is still going on, and also why this case would also be viable. And there are other FLSA cases. So bottom line, from your perspective, you're not interested in having a certification, you think, because in any event, this spoke as of 2006. We don't even need to decide the retroactivity question, either by the Nevada Supreme Court or by us, for your case to go forward. Is that a fair statement? I think that's a fair statement. I don't think there's any issue of retroactivity, and I think that's why the Nevada Supreme Court did not find good cause, because it speaks for itself. It's rare that things actually do speak for themselves in the law, isn't it? Unfortunately, in our profession, it seems that way. I want to thank you, Your Honors, unless you have any further questions. We don't. Thank you very much. Thank you. The case just argued is submitted and
judges: Smith, Nguyen, Friedland